Good morning, your honors, ladies and gentlemen of the court, my name is Jeremy Kripochek and I am the lawyer for Adonis Mahlum. There are two big picture considerations that this court should address in deciding whether the cancellation fee issue is one, that is, the penalty that is placed by Mahlum in his complaint or merely provides customers and Mr. Mahlum with an alternative method of performance under the contract. The first consideration is that California courts have now made perfectly clear that MOS penalty fee does not necessarily need to stem from a breach of contract to be considered a penalty. While in this case there is plenty of precedent, including the in-rate cell phone termination cases and the in-date rec TV termination cases, that suggests that the cancellation of a contract is a breach of that contract. It is not necessary for this court to find for there to be a breach, to find that there is a penalty in this case. Now the second big consideration is whether an alleged penalty is a form of alternative performance. The court should consider whether the payment of the fee is supported by any consideration under the contract, whether it is for future services or past performance by Adobe, and whether the fee bears any relation to any damage that is actually suffered on the termination point. And as to the first point, California law instructs courts to evaluate substance of reform in reviewing whether a contractual penalty provision is disguised as an option or a condition for liquidated damages. Now the most fundamental guideline in evaluating whether a fee provision constitutes a penalty was most recently reiterated by the California Court of Appeals in Graham Prospect Partners where it stated that any provision by which money or property is to be forfeited without regard to the actual damage suffered calls for a penalty and is therefore void. In other words, any analysis of whether a fee provision is a penalty under California law that does not include an evaluation of the actual damage suffered by the defendant is contrary to this most basic tenet of the law regarding penalties in California. And there's a lot of cases that I can discuss on that issue, including the seminal case Blank, Garrett, and there's a couple of cases that are out of the circuit as well that reach that same conclusion. Moving on to the second point, the requirement of consideration for both alternatives cannot be overstated in evaluating whether there is alternative performance. Now the, essentially the black letter law of what alternative performance is, whether two performances may be given by the promiseor and received by the promisee as the agreed exchange for the return performance by the promisee. And so that essentially looks to what return performance is received by the promiseor in seeing whether the alternative is a real one or whether it is an illusory promise that is not supported by any consideration. So if under one of the alternatives, one of the parties offers no performance whatsoever, the contract cannot logically be said to offer an option for alternative performance. That's because for them to be true alternatives, it has to be that each alternative should be a valid contract or a valid avenue in support by adequate consideration if that alternative was the only one that existed. And so then for example in this case, the two alternatives that Adobe argues are present here are the payment of fees in exchange for one year of service and the second alternative is really cancellation of the service in exchange for pay to fee. And so clearly the payment of a fee in return for receiving of services could never have stood as a stand-alone contract because there's nothing supporting the payment of that fee in the first instance. Now had, for example, Adobe given some kind of free equipment upon installation of service, like making cases about alarm monitoring services or, for example, in the context of a cell phone contract where sometimes a cell phone is provided for free in this return in exchange for a 12-month period, nothing like that is present here. Or in cases like Williams where once a contract is canceled, the customer is able to receive, essentially it doesn't necessarily have to be the exact same consideration, but it has to be valid consideration. So for example, in Williams was a contract for the receipt of video games by a customer when those customers canceled in the middle of the contract. After having received some of those games, they were then entitled to the rest of the games owed to them pursuant to that contract in exchange for payment of that fee. So it is rational for a customer to think, you know what, I don't want to get one game per month, I want to get them all in exchange for payment of some. And that makes sense because those recordings, number one, are under that contract. Well, that's, I would think that that's a dispute because in cases like a race cell phone termination, there was actually a trial on the merits of whether or not customers who canceled their contracts in fact breached their agreement with their cell phone provider. And in that case, the jury found that customers that canceled, so not in those cases where Sprint canceled, in those cases where the customers canceled, they found that there was a breach and there was even a motion for a trial on the issue of whether those customers that canceled early and breached their contracts, and the court found that there was no, there was substantial evidence in the records to support a fight and a breach. But the way I understand what you're claiming to contract, you're claiming to contract it for two things, either 12 months of payment or a day, seven weeks, you go, but if you go, you're going to have to do another way to perform your obligations under the contract. And here's what I think. I think I got Morris v. Redwood Empire, which is a California court of appeal interpreting plank. It says, or a contract for a specified period of time permits a party to terminate the agreement. Before its expiration in exchange for some monetary payment, the payment is considered merely an alternative to performance note penalties. Is that what happened here? No, I don't think so. There's a couple of cases that I discussed in the briefing that distinguished Morris on that. And I think the principal reason to distinguish that is the contract in Morris was one of an indeterminate term. So the language saying that where there is a contract for a fixed term is actually dicta, because that's not actually the case before that court. So the court found that the cancellation fee was one that is incidental to opening the account itself. So, for example, there was no situation where the customers in that case could have avoided paying that fee. They were paying that fee no matter because the contract was eventually going to end. They already had to end, whether upon death or at some point. So, for example, that fee could have been paid the first day that they opened that contract because it was one that the court said was incidental to opening the account itself. So, for example, I don't remember exactly what the fee was. Maybe it was $150. The customer could have paid that fee up front, but instead in that case the fee was deferred. And it doesn't really make a difference whether or not the fee is deferred or not. There's only one way to perform under that contract. So I don't even really see that case as one for alternative performance because there is only one way to perform under that contract because there's no way to get out of paying that fee. But in cases like in-rate cell phone termination, say that Morris, and in those cases clearly those were for a fixed term. The customers did cancel early. And yet the court's found reach. There is some dispute about what kind of reach is necessary here. So even if, Your Honor, it's of the view that a customer does not reach the agreement when he or she cancels the agreement, it still doesn't mean that the fee is not charged in instances where there is a breach in contract. So, for example, where had Adobe simply refused to provide services in one for the contract, the customers faced with a situation where Adobe is now in breach in that contract. They're not getting any kind of services. And that customer is faced with two options. Well, they receive a breach in the contract. And surely they can simply settle paying or they can sue for breach of contract or they can cancel the agreement itself. But the cancellation occurs as a result of breach by one of the parties. And, you know, in my mind, in some of the courts that have considered the issue, there is no real distinction between a breach in the context of, for example, a customer saying, I'm just simply going to stop paying services. I think every court that has considered that issue would consider that a breach of contract would simply stop paying services, that a cancellation provision is functionally the exact same thing. Instead of just simply stopping paying and, for example, cancelling the credit card, the customer essentially is calling in the company and says, you know, I'm going to stop paying any services. And at that point, you know, under the contract it's considered a cancellation. But because essentially under the contract the customer could have stopped paying for services and is allowed, it's now all of a sudden converted into a non-breach situation. All the courts that have considered how penalty provisions should be determined consistently say that courts should look to the substance of the agreement and not the form because essentially a smart lawyer won't be able to find a way to draft this kind of provision so that it doesn't breach the contract. This was even the law for a long time in California in cases of late fees. The argument used to be that, for example, the customer does not breach the agreement by payment, by the late payment due under the contract. Instead, they are choosing to delay payment, a right given to them under the contract, and then choosing to pay a fee for the privilege of late payment. Now, that was initially in courts held that that was alternative performance. But somewhere down the line, courts shifted and said that that is a penalty. Now, I don't think that the analysis should be any different here because the fee is charged in an effort to compel the actual performance due under the contract, which should be in a performance well for months of service. And these kind of decisions go back to at least 100 years to cases like the Rice versus Straub, I believe, in cases of a classic buyer breach situation. So in a case where the buyer contracts to buy, for example, 5,000 widgets from the seller, there's some part performance, the buyer pays for 2,500 widgets, and then at that point says, you know what, I'm not accepting any more widgets. Usually courts see that as a breach of contract, but they hold that that is not a liquid data debt. And they hold those kind of fees as penalties because in a typical buyer breach situation, it is fairly easy to determine the actual cost to the seller of that service or product that is due upon that kind of breach in the middle of a contract. Hey, why don't we hear from the other side? You've got about two minutes, and then we can give you a response. Thank you, Your Honor, and good morning. Trent Norris, article reporter at KSchuler for Adobe Systems, and I'm joined here by my colleague, Jonathan Koenig, as well. Your Honor, I think it would be helpful here to set back first and say, what is this provision, and then say it very clearly. Very clearly, we'd hate to see you go, but if you cancel on the first 30 days, we'll give you a full refund. Otherwise, you'll be billed 50% of your remaining contract obligations. So if you have the general sense of the distinction between a permissible liquidated damages clause and an impermissible clause providing for a set amount in the event of non-performance, therefore not a penalty, is that number one, the amount of actual damages must be somewhat difficult to ascertain, and the amount assessed as liquidated damages must be a reasonable approximation to the amount of harm suffered by the person to whom the liquidated damages are paid. That's roughly the general rule. California has this somewhat bodily, I'm just expressing it, I'm saying, and if it's not, if the fine is not a penalty, we'll call it an alternative means of performance. So let me ask you, number one, is it difficult to determine the amount of actual harm to a Dolby if someone cancels after 30 days? Well, Your Honor, I just respectfully say I think you're down one branch of the analysis. The first question is whether this is a liquidated damages provision. Now, if it is, then it must meet the standard. And then we evaluate the issue. I will quote the liquidated damages provision, and for the purposes of my question, it's a small but definite characterization. Okay, Your Honor, we disagree, of course. I know we think that that's where the case should end, but if you were looking at what are the extra issues there, we would agree that those are factual issues. They're not planned. They're not in the possession, of course, of the plaintiff. Absolutely. Let me ask you, I'm just thinking about the economics of this proposition. What harm is there to a Dolby from the cancellation, other than the fact that he's no longer going to be in the money? Well, so, Your Honor, I haven't understood. Well, the plaintiff has agreed up front that they'll pay for 12 months of service, and they may pay for the entire 12 months of service right at the beginning before they get paid overtime. And if they cancel in the middle, they get back 50% of what they would have owed for the money. I understand that, Your Honor. And so the plaintiff tries to allege that this is all free for a newbie to provide these services. It's not. Each additional consumer, each additional person using the services, does require the company to incur some costs. There are customer service costs. There are costs of downloading their servers. In this particular service, the consumers are uploading documents to Adobe servers that are maintained in the cloud and available for download at any time so that the- So, what's the marginal cost of commercial renewal? I don't know, Your Honor. It's not in the record, and it wasn't a fact that we needed to get to in this case because the district court determined, as we contend, that this is an alternative means of performance and not a liquidated damages provision. But it's true, it's really true. These cases have been troublesome along the line. As I look out at the California State Courts and the California State Courts in general, I'm having trouble with these. I'm trying to figure out what the- I think the caseload model is a little bit in my view. Well, Your Honor, I think there is some confusion in the caseload, certainly, but what comes through clearly is that when the consumer is paying the fee at the end of it, if the fee is more than what the consumer would otherwise have been obliged to pay, that's questionable. That's a situation in which I don't think it's questionable. Well, I think it's- Well, I think it's- Absolutely. Your Honor's dissent said- I'm sure Your Honor's dissent said just that as well. I don't think that the California Courts have said, but we don't need to decide that issue here because the area is always less. Whatever the remaining term is of the contract, the consumer owes half of that amount and has billed half of that amount so that the number is never an additional charge that's made on it. It's nothing that looks like a forfeiture or a penalty. Instead, in exchange for saying, you know, I don't want the service any longer, Adobe says, well, you don't have to pay the full amount going on your contract, but it will be reduced. We will forgive your obligation to pay us the remainder, and in exchange we'll stop service because that's what you've asked for, and you owe us only half of that remaining amount. It is always less than what the consumer would claim to pay up front for the full year of service. So the piece of work is to pay $600. Mr. Ballum decided to cancel his contract. He did not breach it. He decided to cancel the contract voluntarily. This was at his collection. There's no allocation that Adobe breached. There's no allocation that Mr. Ballum breached either. And then at that point he owed half of what was remaining on it. And perhaps it helps us step back from this and say that was the amount that was due. It was due in installments on a monthly basis. But as with a magazine subscription, Adobe could charge that full amount up front, $600 for the full year. And guess what? If you quit at six months, you get $150 back. That's refunded to you. That's just a function of who has the money. And that's where the allocation is funded in consumer psychology. If you ask somebody to pay the full amount of the yearly subscription up front, you're going to sell a lot fewer subscriptions. And, of course, you know that. Well, it may be true that people can't afford the $600 up front, but if they can't afford it up front, it feels very different. Everybody knows that you've got to sell a lot fewer if that's the way you feel. And it may feel different, Your Honor. I think, in fact, it's a reason for the confusion Mr. Malin has here. But it's not legally any different because the obligation exists at the moment the contract is signed to pay for $600 for the service for the full year. And what happens is that the consumer has flexibility. And, by the way, that's where the contract could have ended. And many do. And so you owe us the $600 whether you use the service or not. You owe the subscription to the New Yorker whether you read it or not. As it arrives each month. And so, instead, the contract says, if you'd like to cancel your service at some point in the middle, we'll forgive half of what you would have paid us on the remainder of term of the agreement. That's a rational choice, and I'm relying on the important 1974 California Supreme Court case that really decides this issue. That constitutes an alternate means of performance. Morris, the other case that interpreted by the board and really looks at it very clearly, says clearly where a contract for a specified period of time permits a party to terminate the agreement before its expiration. That's what we have here. Any student's role on some monetary payment. The payment is considered merely an alternative to performance penalty. So whether it's characterized as an additional $150 is the payment, or whether it's characterized as, we've forgiven $150 of the $300 that you owe us. Now, at this point, see, therefore, you still owe us $150. That's where Morris comes out on this. And it's always less. So it's different for Hutchinson and Schneider. The two cases that Your Honor, Judge Fletcher, has addressed in the past as well. In either of those cases, the High Circuit held that those fees, although they were lower, weren't an evaluated mistake. Well, yes. You stated just as much. And we don't have to decide. Those were matters of state law, and those were unpublished by a matter of dispositions. And if they were, Your Honor, the appellant might know anything that was said there, whether the majority or the disposition. Well, the majority says an issue of state law. So it is a question of alternate means of performance. And we have a series of state law decisions where there's 75% owed, even 100% owed. So the video game case that Judge G. cited was similarly on those grounds where 100% was still due, it's just the timing of it changed in the video game case. So we think it's clear that here we have alternate means of performance, which is exactly what Judge Doe held, and that that is clear really under all of California Case Law that deals with this issue. You know, we don't have an issue here where Adobe prompted the breach or Adobe unilaterally imposed the charge. There's no allegation here of any sort of breach that took place. And if you apply Blank and Morris faithfully as this Court has many times, we think it comes out that way. The other thing that the plaintiffs have talked about then was whether this was a forfeiture under the Grand Prospect case. And here I respectfully suggest that these be used in case law because the issue is not whether this, if it were to constitute a forfeiture, if it were indeed liquidated damages, then we would need to evaluate those damages. We would definitely need to look at whether the amount of money is really the appropriate way to look at it. But that's not what's going on here. What's going on here is that the plaintiff has agreed to pay a set fee for a full year of service. If they decide in the middle of that that they don't want the full year of service, they get half their money back that they haven't paid already for the remaining period of time. So it's fully consistent with the case law on this under all of California law. And with that, I'm prepared to rest on Grace's most important questions. Are there questions? Thank you. I can't hear you. It seems to be on. You have a statement of some kind? I don't know. I'm trying to be brief. Just the concept of what the rational choice is here, according to the defendant, Adobe, it is whether or not you want to pay half of the amount still owing or continue to receive these services and pay the full amount. Now, as some courts, like in MNIC, decided the actual rational choice that the customer is facing is now whether they want to face a half the amount versus the full amount. The rational choice is, for example, the customer that wants to cancel in month number two, the rational choice is do I want to enter into a contract for two months and pay, for example, $100, whatever that amount might be, or do I want to enter into a contract where I have to pay for those two months and also an additional maybe $300 for early termination. So you're facing the option of paying potentially $300 to $350 for two months  and a rational person would, if they knew that they were going to only use the service for two months, would surely find a service where they could pay per month or for a two-month term. The other issue is, and I don't think I've ever heard Adobe dispute, our contention that there is no consideration for the forgiveness of a debt that is already lawfully due by the buyer in this situation. So the full amount of the term was already an obligation that is lawfully owed under the contract, so the separate fee, the early termination fee, to forgive the debt that is already owed under the contract, and that's for the full 12 months, is not supported by valid consideration under California law. There must be something else there that they're getting in return other than the forgiveness of that debt, and I haven't heard any argument that there is anything else there, whether it be fees and services or private property. Okay, thank you very much. Thank you both so much for that argument. Milo versus Hugo. This is the 2,000-minute decision. We've got one remaining case on the calendar, G3 Corporations versus S&T. Yes.
judges: W. Fletcher, Rawlinson, Pratt